IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ALABAMA
SOUTHERN DIVISION

| | |
|---|---|
| **MATTIE S. BAILEY,** ) | |
| ) | |
| **Plaintiff,** ) | |
| ) | |
| v. ) | CIVIL ACTION 04-0406-WS-B |
| ) | |
| **GMRI, INC., etc.,** ) | |
| ) | |
| **Defendant.** ) | |

**ORDER**

This matter is before the Court on the plaintiff's motion to alter, amend or vacate. (Doc. 40). The motion is in substance one for reconsideration of the Court's order granting the defendant's motion for summary judgment as to the plaintiff's claims for negligence and negligent failure to train. (Doc. 39).

The grant or denial of a motion to reconsider is left to the discretion of the trial court.[1] Such a motion may not be used as a vehicle to inject new arguments into the underlying motion for summary judgment,[2] or to submit evidence previously available but not properly presented on the underlying motion.[3]  Instead, "[a] motion to reconsider is only available when a party presents the court with evidence of an intervening change in controlling law, the availability of new evidence, or the need to correct clear error or manifest injustice."[4]

**I.  Negligence.**

In its initial briefing, the plaintiff assumed sub silentio that her negligence claim could be evaluated by employing standards adapted for cases involving the AEMLD and sealed containers.  The

---

[1]*E.g., Chapman v. AI Transport*, 229 F.3d 1012, 1023-24 (11th Cir. 2000)(en banc).

[2]*E.g., Mays v. United States Postal Service*, 122 F.3d 43, 46 (11th Cir. 1997).

[3]*E.g., id.*

[4]*Summit Medical Center, Inc. v. Riley*, 284 F. Supp. 2d 1350, 1355 (M.D. Ala. 2003).

Court rejected this effort and, applying the standard governing negligence claims such as hers, concluded that she had failed to demonstrate the existence of a genuine issue of material fact. On motion to reconsider, the plaintiff argues that she can take advantage of the more forgiving standards applicable to AEMLD and closed container cases. She further argues that, even using the ordinary negligence standard, the defendant is not entitled to summary judgment.

### A. Reasonable Expectations.

In its previous order, the Court concluded that, under Alabama law, the plaintiff could not establish a presumption of negligence simply by showing that she reasonably did not expect to find a wooden sliver in her meal. The Court noted that the "reasonable expectations" test is limited to causes of action under the AEMLD and breach of warranty. (Doc. 39 at 3). The plaintiff objects that, in *Flagstar Enterprises, Inc. v. Davis*, 709 So. 2d 1132 (Ala. 1997), the Court "applied the reasonable expectations test to the plaintiff's <u>negligence</u> claims." (Doc. 40 at 3 (emphasis in original)). As discussed in the Court's previous order, however, the *Flagstar* Court merely *mentioned* the reasonable expectations test in addressing the negligence claim and *applied* the test only in addressing the AEMLD claim. (Doc. 39 at 3 n.3).[5]

Unable to cite a single negligence case applying the reasonable expectations standard, the plaintiff emphasizes that negligence claims are not subsumed by the AEMLD. (Doc. 40 at 3). This statement is undoubtedly correct, *see Tillman v. R.J. Reynolds Tobacco Co.*, 871 So. 2d 28, 34-35 (Ala. 2003), but the proposition simply underscores that the elements of the two torts are not the same; it does nothing to demonstrate that negligence claims now utilize a reasonable expectations standard.

The plaintiff faults the Court for "fail[ing] to address whether the standards adopted for

---

[5]The very quote from *Flagstar* on which the plaintiff relies disproves her argument. Even though the defendant admitted that the plaintiff "would not reasonably expect to find human blood in food purchased from a restaurant," *id*. at 1141-42, the Court "h[e]ld" that the defendant could be found negligent based on its employee's "fail[ure] to properly bandage a cut or abrasion on her arm or [her] fail[ure] to observe that blood had gotten onto the styrofoam container." 709 So. 2d at 1140-41. The Court pointedly did *not* hold that the plaintiff's reasonable expectations satisfied her burden under her negligence claim.

negligence after the AEMLD have any effect on common-law negligence actions," (Doc. 40 at 3), but she has never met her initial burden of suggesting some plausible reason why the reasonable expectations test might extend to negligence claims despite the absence of any case so extending its reach. Nevertheless, even a brief review of Alabama law exposes the indefensibility of such a position.

In 1976, the AEMLD arrived in *Atkins v. American Motors Corp.*, 335 So. 2d 134 (Ala. 1976), and its sister case, *Casrell v. Altec Industries, Inc.*, 335 So. 2d 128 (Ala. 1976). Under products liability theories such as the AEMLD, liability is based on "the dangerous characteristics of the end product," while under traditional negligence theories, liability is based on "the methods or processes by which [the product] was produced." *Id*. at 131. Thus, under the AEMLD, "[l]iability ... attaches solely because the defendants have exposed expected users of a product not reasonably safe to unreasonable risks," even if the defendant "has exercised all possible care in the preparation and sale of his product." *Id*. at 132-33. That is, unlike in traditional negligence actions, "[t]he care with which a defective product is manufactured and sold is now immaterial." *Id*. at 133.[6]

Under the AEMLD, the plaintiff must prove the product is unreasonably dangerous. *Casrell v. Altec Industries*, 335 So. 2d at 132. A product that is unreasonably dangerous is perforce defective. *Id*. at 133. A defective product, in turn, is one that "does not meet the reasonable expectations of an ordinary consumer as to its safety." *Id*. The "reasonable expectations" test applicable in tainted food cases under the AEMLD represents a straightforward application of the reasonable expectations standard adopted in *Casrell* to measure whether a product is unreasonably dangerous. *See Ex parte Morrison's Cafeteria, Inc.*, 431 So. 2d 975, 978 (Ala. 1983).

In short, the "reasonable expectations" test is precisely that which distinguishes AEMLD claims from negligence claims. While the former tort ignores the defendant's exercise of care and focuses instead on the dangerousness of the product as measured against the consumer's reasonable expectations, the latter tort focuses directly on the defendant's care. To argue that the reasonable

---

[6]*Accord Atkins v. American Motors*, 335 So. 2d at 139 ("The gravamen of the action [under the AEMLD] is not that the defendant failed to exercise due care in the manufacture [of] a defective product; rather the gravamen of the action is that the defendant manufactured ... a defective product which, because of its unreasonably unsafe condition, injured the plaintiff ....").

expectations standard applies to negligence claims is thus to argue that negligence claims are identical to (and therefore subsumed within) AEMLD claims — exactly the proposition repudiated by the Alabama Supreme Court in *Tillman* and by the plaintiff in her motion to reconsider.[7]

### B. Sealed Containers.

In its previous order, the Court concluded that the plaintiff could not establish a prima facie case of negligence based on the presence of foreign matter in her meal because that rule is limited to cases involving sealed containers of food or drink. (Doc. 39 at 4). Even though the rule by its express terms applies to "a sealed package or bottle," *Opelika Coca-Cola Bottling Co. v. Johnson*, 241 So. 2d 327, 329 (Ala. Civ. App. 1970), the plaintiff insists the rule is not really so limited. She is, however, unable to cite a single case applying this standard that did *not* involve sealed containers,[8] nor a single case that suggested the standard can be applied in other circumstances. The best she can do is to note that *Johnson* referenced a hypothetical situation "involving a fire sparked by a locomotive." (Doc. 40 at 7). The *Johnson* Court's discussion of trains, however, consisted of an illustration why a defendant's evidence that its processes prevent foreign matter from entering the container (or prevent sparks from starting a fire) does not necessarily entitle the defendant to summary judgment. *Id*. at 329. This discussion, of course, does not remotely suggest that restauranteurs may invoke a principle governing manufacturers of sealed containers.

---

[7]Parenthetically, the Court notes that the Alabama Pattern Jury Instructions continue to this day to include a charge for a products liability claim sounding in negligence, wherein the defendant's duty is expressed as one to "exercise reasonable care in the manufacture of his product." Alabama Pattern Jury Instructions Civil 32.01. This, of course, is precisely the standard that is legally incompatible with a "reasonable expectations" test.

[8]All seven cases cited by the *Johnson* Court in support of its rule are sealed container cases. *See Dr. Pepper Co. v. Brittain*, 176 So. 286 (Ala. 1937); *Lewis v. Linkett*, 167 So. 286 (Ala. 1936)(bottled drink); *Collins Baking Co. v. Savage*, 150 So. 336 (Ala. 1933); *Coca-Cola Bottling Co. v. Crook*, 132 So. 898 (Ala. 1931); *Gardner v. Baker*, 113 So. 2d 695 (Ala. App. 1959)(bottled drink); *Gardner v. Sumner*, 113 So. 2d 523 (Ala. App. 1959)(bottled drink); *Alabama Coca-Cola Bottling Co. v. Causey*, 180 So. 588 (Ala. App. 1938).

**C. Other Arguments.**

In its previous order, the Court identified the correct legal standard as whether the defendant "exercise[d] that same degree of care which a reasonably prudent man, skilled in the art of selecting and preparing food for human consumption, would be expected to exercise in the selection and preparation of food for his own private table." (Doc. 39 at 4 (quoting *Flagstar Enterprises v. Davis*, 709 So. 2d at 1139-40)).[9] The plaintiff's only effort to meet this test was to argue that it was negligent to allow the same persons to prepare both dishes with toothpicks and dishes without. The Court rejected this argument due to the plaintiff's failure to explain why a reasonably prudent, skilled person cooking for his own private table would disallow this practice. (*Id.*).

The plaintiff now concedes that such a person would *not* disallow this practice. (Doc. 40 at 6). Instead, she argues that the skilled cook/private table test is inappropriate because, since such a person functions both as cook and diner, he would be aware of the possibility of toothpicks in his meal and so would exercise greater caution when eating, allowing the exercise of less caution when cooking. (*Id.*). This tangled argument suffers from many flaws, but its principal fatal defect is that it can succeed only by impermissibly ignoring the legally controlling test of reasonable care. Moreover, as an argument never raised in opposition to summary judgment, it comes too late to be considered.

The plaintiff also invokes obliquely the doctrine of res ipsa loquitur, insisting that a toothpick simply could not be in her meal if the defendant had exercised reasonable care. (Doc. 40 at 6).[10] This argument, confined to a single sentence, is too skeletal to be evaluated. At any rate, no such argument was presented in opposition to summary judgment, precluding its consideration on motion to reconsider.

The plaintiff next argues that the defendant's lack of food preparation protocol concerning

---

[9]The plaintiff herself presented this as the controlling standard, (Doc. 35 at 11), further undermining her efforts to invoke the "reasonable expectations" and "foreign matter" standards.

[10]*See generally Ex parte Mobile Power & Light Co.*, 810 So. 2d 756, 759 (Ala. 2001) (describing the doctrine as requiring, inter alia, a showing of "circumstances ... such that according to common knowledge and the experience of mankind the accident could not have happened if those having control of the management had not been negligent")(internal quotes omitted).

toothpicks or other foreign objects can support an inference that its employees negligently prepared her meal. (Doc. 40 at 6-7). The Court has already rejected this argument, (Doc. 39 at 5), and the plaintiff's one-sentence presentation does nothing to undermine the Court's conclusion. However, the Court does note that, in addition to the defects noted in its previous order, the plaintiff has offered no authority for the proposition that an employer's failure to train an employee is itself evidence that the employee behaved negligently on a particular occasion.

Next, the plaintiff complains that the Court "made a factual determination that the wood ingested by [her] was not easily detectable." (Doc. 40 at 5). The Court made no such determination. Instead, the Court simply noted that the plaintiff had identified no evidence that the sliver *was* easily detectable and that her own brief affirmatively suggested that it was not. (Doc. 39 at 6). At any rate, the challenged statement occurred as part of the Court's discussion of a legal argument that the plaintiff "could have, but did not, advance." (*Id*. at 5). As such, the challenged statement had no bearing on the outcome of the defendant's motion for summary judgment.

Finally, the plaintiff insists that, because the Court found a factual issue as to whether she ingested the sliver at the defendant's establishment or elsewhere, "a dispute of material fact exists, which must be submitted to the jury." (Doc. 40 at 2). This is patently incorrect. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Because there is a complete failure of proof concerning the defendant's negligence, the dispute over where the plaintiff ingested the toothpick cannot be "material" to that claim.[11]

## II. Negligent Failure to Train.

In its previous order, the Court noted that Alabama law requires a plaintiff alleging such a claim to prove that the employee of the defendant who harmed the plaintiff had committed past acts, of which the employer knew or should have known, reflecting the employee's incompetency and thus the need for additional training. Because the plaintiff identified no such evidence, the Court granted summary

---

[11]This factual issue is of course material to the plaintiff's surviving claim for breach of contract.

judgment as to this claim. (Doc. 39 at 7-8). The plaintiff now argues that the duty to train depends only on the expectations of the defendant's customers that their food will not contain foreign objects. (Doc. 40 at 8).

As a threshold matter, the plaintiff did not raise this argument in opposition to summary judgment, and she may not do at this tardy juncture. Indeed, her current argument is flatly inconsistent with her original briefing, which acknowledged the controlling legal standard employed by the Court. (Doc. 35 at 20). Nor does the plaintiff offer any support for this proposition other than her facially insufficient ipse dixit that it represents "such a fundamental statement of the law" that citation to authority is unnecessary. (Doc. 40 at 8).

The plaintiff devotes most of her challenge to the Court's statement that "the plaintiff in a failure-to-train claim must also prove underlying wrongful conduct by the employee." (Doc. 39 at 8 n.7). She concedes that a plaintiff in a negligent *investigation* case must prove the underlying wrongful conduct, but she pleads inability to locate any case extending that requirement to claims of negligent *training*. (Doc. 40 at 8). In fact, the Court's previous order identified and quoted such an opinion. (Doc. 39 at 8 n.7 (quoting *Thrasher v. Ivan Leonard Chevrolet, Inc.*, 195 F. Supp. 2d 1314, 1320 (N.D. Ala. 2002)).[12]

In a similar vein, the plaintiff argues that, even if a plaintiff must prove the employee's underlying conduct when that conduct constitutes an *intentional* tort (such as assault in a sexual harassment case or fraud in an insurance case), there is no similar requirement when the employee's conduct constitutes mere *negligence*. (Doc. 40 at 8-9). This argument is as unsupported and illogical as the previous one. The Alabama Supreme Court has been careful to phrase the requirement as one to prove the employee's underlying "wrongful conduct," without distinguishing between intentional and non-

---

[12]*Thrasher* represents an inescapably logical application of Alabama cases requiring proof of underlying wrongful conduct by the inadequately trained employee in cases of negligent investigation, *Stevenson v. Precision Standard, Inc*., 762 So. 2d 820, 825 (Ala. 1999); negligent supervision, *University Federal Credit Union v. Grayson*, 878 So. 2d 280, 291 (Ala. 2003); and negligent hiring, *Voyager Insurance Cos. v. Whitson*, 867 So. 2d 1065, 1073 (Ala. 2003). Since *Grayson* and *Whitson* extended *Stevenson* as a matter of course, there is absolutely no reason to suspect that the same requirement does not also extend to cases of negligent training, as *Thrasher* easily concluded.

intentional torts,[13] and a federal court has expressly recognized the obvious conclusion that the same requirement applies when the employee is accused of negligence. *Molinari v. Tuskegee University*, 339 F. Supp. 2d 1293, 1301 n.20 (M.D. Ala. 2004).

The plaintiff's challenge is beside the point in any event, since the Court — because the defendant did not raise the argument — did not rely on the plaintiff's inability to prove wrongful conduct by an employee as its basis for granting summary judgment. Rather, the Court merely pointed out as an aside this additional, unnoticed defect in the plaintiff's claim. (Doc. 39 at 8 n.7).

One final remark in the plaintiff's motion requires attention. She states that "[t]his Court may not agree with claims such as the one brought by Mrs. Bailey and it may not like her assertions, but its role at the summary judgment stage is **not** to make factual determinations." (Doc. 40 at 2 (emphasis in original)). As should be plain from a reading of its previous order, the Court has made no factual determinations. Rather, it has correctly limited its review to the determination whether (as to those claims with respect to which the defendant has borne its initial burden) the plaintiff has submitted evidence that, under the prevailing legal standards, creates a genuine issue of material fact as to such claim. The Court neither "likes" nor dislikes the assertions of the plaintiff or any other party and neither "agrees" nor disagrees with the claims brought by the plaintiff or any other party, but simply rules on the parties' motions based on the law and the evidence presented. The Court assumes that the plaintiff's suggestion to the contrary reflects only a momentary lapse in decorum and not a deliberate attack on the integrity of the Court.

For the reasons set forth above, the plaintiff's motion to reconsider is **denied**.

DONE and ORDERED this 27th day of June, 2005.

                                                s/ WILLIAM H. STEELE
                                                UNITED STATES DISTRICT JUDGE

---

[13]*University Federal Credit Union v. Grayson*, 878 So. 2d at 291; *Voyager Insurance v. Whitson*, 867 So. 2d at 1073; *Stevenson v. Precision Standard,* 762 So. 2d at 825.